IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| WILLIAM PRESTON ANDERSON, | ) Case No. 08-62402-ABF |
| NANCY SUE ANDERSON, | ) |
| | ) |
| Debtors. | ) |

ORDER DENYING TRUSTEE'S MOTION FOR TURNOVER

J. Kevin Checkett, the Chapter 7 Trustee in the bankruptcy case of William and Nancy Anderson, filed a motion seeking turnover of federal and state tax refunds, as well as funds in a bank account. At a hearing held on June 11, 2009, the Trustee announced that he had received the tax refunds and that he therefore withdrew that portion of the motion. This court has jurisdiction based on 28 U.S.C. §§ 1334 and 157. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). For reasons to be stated, the Trustee's motion is DENIED.

On the date that the Debtors filed their bankruptcy petition, December 18, 2008, they held funds in a bank account at First State Bank. On or prior to that date, they had issued checks which did not clear until after the date on which the bankruptcy case was filed. The Trustee concedes that under the Eighth Circuit's decision in *In re Pyatt,*[1] a debtor is not required to turn over money represented by checks which had been written prior to the bankruptcy filing, but had not yet cleared until after the

---

[1] 486 F.3d 423 (8th Cir. 2007).

bankruptcy case was filed. The Trustee contends, however, that, after giving the Debtors credit for the checks which were outstanding at the time of the filing, and after considering applicable exemptions, there remains $1,246 which the Debtors should be required to turn over to him.

In response to the request for turnover, the Debtors contend that the funds in the checking account on the petition date largely represent proceeds from the Debtors' Civil Service Retirement (CSR) and are, therefore, exempt pursuant to 11 U.S.C. § 522(b) and 5 U.S.C. § 8346(a). In the alternative, they assert that the Trustee is prohibited from seeking recovery from them pursuant to *Pyatt* because the money had been spent by the time the Trustee demanded turnover.

## DISCUSSION

### *Exemptability of the CSR Funds in the Debtors' Account*

Missouri has opted out of the federal exemption scheme and, as a result, Missouri debtors may claim exemptions under Missouri law and federal law *other than* § 522(d).[2] The Debtors point to 5 U.S.C. § 8346(a) as such a federal law providing Missouri debtors with an exemption in CSR proceeds. That section provides:

> The money mentioned by this subchapter is not assignable, either in law

---

[2] 11 U.S.C. § 522(b)(1)-(3).

>or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.[3]

The Trustee does not appear to dispute that the Debtors' interest in their CSR pension annuities are "money mentioned by this subchapter"[4] and, thus, exempt under this provision. Further, the Trustee does not appear to dispute that the money in the Debtors' bank account as of the petition date is traceable to the payments from the exempt CSR pension annuities. The question, then, is whether the CSR funds retained their exempt status after they were paid to the Debtors and placed in their bank account.

Generally speaking, once money from an exempt fund is paid out and placed in a bank account, such money typically loses its exempt status. However, Congress has enacted statutes to protect certain limited types of funds, even after they have been paid out. For example, 42 U.S.C. § 407, relating to social security benefits, provides, in relevant part, as follows:

>(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys *paid or payable* or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other

---

[3] 5 U.S.C. § 8346(a).

[4] Apparently, this phrase refers to Subchapter III (Civil Service Retirement) of Title 5, Part III, Subpart G, Chapter 38 of the United States Code.

legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this Section.[5]

Based on the language "paid or payable," many courts have held that social security benefits do not lose their exempt status after they are paid to the debtor.[6] Indeed, as discussed more fully below, the Bankruptcy Appellate Panel for the Eighth Circuit recently held that, based on the broad language of 42 U.S.C. § 407, social security benefits, whether paid or payable, are not property of a bankruptcy estate to begin with, if they are still held by the debtor.[7]

With regard to CSR benefits, in some contrast to § 407's "moneys paid or payable" language for social security benefits, § 8346 refers to "[t]he money mentioned by this subchapter." While recognizing that § 8346 is not as clear as § 407, the majority of courts have held that, like social security benefits, CSR benefits are intended by Congress to be protected, even after they have been paid to the recipient.[8]

---

[5] 42 U.S.C. § 407(a) and (b) (emphasis added).

[6] *See, e.g., In re Radford*, 265 B.R. 827, 828 (Bankr. W.D. Mo. 2000). *See also Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 416, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973).

[7] *Carpenter v. Ries (In re Carpenter)*, ___ B.R. ____, 2009 WL 2004018 (B.A.P. 8th Cir. July 13, 2009).

[8] *See State of Missouri ex rel. Nixon v. McClure*, 969 S.W.2d 801 (Mo. Ct. App. 1998) ("A majority of courts considering the issue hold that the protection afforded by § 8346(a)

For example, in *Tom v. First American Credit Union*, the Tenth Circuit Court of Appeals pointed out that both § 407 and § 8346 "are designed to guard the elderly from creditors who would separate them – through whatever means – from the money that they need to survive," and held that, "[a]lthough not as precisely drafted as § 407, the broad language of § 8346 offers no hint that its protections are any narrower than those afforded to Social Security payments or that Congress intended to treat future payments any differently than payments already received."[9] "Accordingly," the Tenth Circuit held, "we conclude that § 8346, like § 407, protects both a beneficiary's right to receive future pension payments and any such payments that [the beneficiary] has already received."[10]

At least two courts have held to the contrary: *In re Estate of McGreevy*[11] and *Matter of Prestien*.[12] It appears that every case subsequent to *Prestien* has disagreed

---

continues to apply to the funds even after they are in possession of the payee.").

[9] 151 F.3d 1289, 1293-94 (10th Cir. 1998).

[10] *Id.* at 1294 (citations omitted).

[11] *In re Estate of McGreevy*, 286 A.2d 355, 356 (Pa. 1971) ("A reading of section 8346(a) . . . reveals a Congressional intent to protect the monthly retirement annuity payments from assignment, execution, levy, attachment, garnishment or other legal process *until the funds reach the hands of the recipients*.""We hold that once the monthly retirement annuity benefits reached the hands of [the annuitant's] guardian the exemption provisions of section 8346(a) . . . ceased to control the ultimate disposition of the payments received.") (emphasis added).

[12] *Matter of Prestien*, 427 F.Supp. 1003, 1007-08 (S.D. Fla. 1977) (holding that § 8346 exempts only future pension amounts and not those already paid and accumulated).

with this conclusion, however. As the Supreme Court of Arkansas pointed out in the case of *Waggoner v. Game Sales Co., Inc.*:

> The Supreme Court of Pennsylvania [in *McGreevy*] based its decision upon Congressional intent and "the general rule is that language relating to exemptions is to be strictly construed." In reading the statute and examining the legislative history of the act, we are unable to find anything to demonstrate a Congressional intent to limit the exemption to funds held by the Federal government. In fact, the Senate Report on a 1978 amendment to § 8346(a) provides: "Under existing law 5 U.S.C.A. § 8346(a), payments under the civil service retirement system are not assignable or subject to . . . garnishment . . . ." (Emphasis added.) S.Rep. No. 95-1084, 95th Cong., 2d Sess. [1978] U.S.Code Cong. & Ad.News 1379, 1380. In addition, our general rule, unlike Pennsylvania's, is that exemptions are to be liberally construed. *Williams v. Swann*, 220 Ark. 906, 251 S.W.2d 111 (1952).
>
> Similarly, we are not persuaded by the reasoning expressed by the Federal District Court in Florida [in *Prestien*]. That court based its opinion on the Pennsylvania case, and on the case of *McIntosh v. Aubrey*, 185 U.S. 122, 22 S.Ct. 561, 46 L.Ed. 834 (1902). There is no need for further discussion of the Pennsylvania case, and the case from the Supreme Court of the United States is clearly distinguishable. In that case, based upon an entirely different statute, the exemption applied to "money due, or to become due, to any pensioner." The language operated to exempt only payments due and future payments, in other words, funds still in the hands of the government, and not to funds already paid.[13]

Thus rejecting the analysis in *McGreevy* and *Prestien*, the Arkansas Supreme Court held that "the better rationale is to follow the clear language of the statute and to hold that the money which came from disability payments by the Civil Service Retirement

---

[13] *Waggoner v. Game Sales Co., Inc.*, 702 S.W.2d 808, 809 (Ark. 1986).

6

System is exempt from garnishment . . . under the provisions of 5 U.S.C.A. § 8346(a). In *State v. McClure*, the Missouri Court of Appeals adopted *Waggoner*'s analysis and agreed with its conclusion, pointing out that it found no cases subsequent to the 1978 amendment to § 8346(a) that have held contrary to *Waggoner*.[14] I found none, either.

Finally, and significantly, in *Tom v. First American Credit Union* discussed above, the Tenth Circuit Court of Appeals acknowledged the *McGreevy* and *Prestien* decisions, but then relied on *Waggoner* and similar cases in reaching its conclusion that § 8346, like § 407, protects both a CSR beneficiary's right to receive future pension payments and any such payments already received.[15]

Keeping in mind that, contrary what is apparently Pennsylvania state law, exemptions in the bankruptcy context are to be liberally construed in favor of the debtor,[16] I agree with the decisions in *Tom*, *Waggoner*, and *McClure*, and conclude

---

[14] 969 S.W.2d at 806-808.

[15] *Tom v. First American Credit Union*, 151 F.3d at 1293-94 (citing *Waggoner v. Game Sales Co.*, 702 S.W.2d 808 (Ark. 1986) (reaching same conclusion); *State of Missouri ex rel. Nixon v. McClure*, 969 S.W.2d 801 (Mo. Ct. App. 1998) (same); *Joseph v. Giacalone*, 637 N.Y.S.2d 771 (N.Y. App. Div. 1996) (same); *Sears, Roebuck and Co. v. Harris*, 854 P.2d 921 (Okla. Ct. App. 1993) (same)). *See also In re Seddon*, 255 B.R. 815 (Bankr. W.D. N.C. 2000) (holding that CSR funds "that have been paid or that will be paid to the debtor are subject to the anti-alienation provisions of [5 U.S.C. § 8346]").

[16] *See Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 875 (8th Cir. 1988) ("the policy of [exemption] statutes is to favor the debtors, at the expense of creditors . . . such statutes are construed liberally in favor of the exemption") (citation omitted); *Murray v. Zuke*, 408 F.2d

7

that § 8346 protects CSR benefits, even after they are paid to the beneficiary. As a result, the Debtors may claim an exemption in the money in their bank account that is traceable to their CSR benefits.

That said, the Eighth Circuit BAP's recent decision regarding social security benefits in *Carpenter v. Ries*, mentioned above, bears some discussion. That case involved a Minnesota debtor. In Minnesota, unlike Missouri, bankruptcy debtors are permitted to choose between either (i) the exemptions listed in § 522(d), or (ii) those provided under Minnesota and federal law other than § 522(d).[17] Such a debtor must choose one of these options to the exclusion of the other.[18] The debtor in *Carpenter* chose exemptions under § 522(d). Thus, the trustee in that case argued, the debtor was not permitted to claim social security benefits exempt pursuant to § 407 because that statute is a federal law *other than* § 522(d).

The BAP concluded, however, that § 407 is not an exemption statute for purposes of bankruptcy; rather, § 407 operates to remove a debtors' interest in social security benefits from the bankruptcy estate altogether. That is because § 407 provides that "none of the moneys paid or payable . . . under this subchapter shall be

---

483, 487 (8th Cir. 1969) ("exemption laws were manifestly enacted for the relief of a debtor . . . and should be liberally construed").

[17] *In re Carpenter*, ___ B.R. ___, 2009 WL 2004018 at *1.

[18] *Id.*

subject to . . . *the operation of any bankruptcy or insolvency law*" and that "[n]o other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section."[19] Because neither § 541 (which defines what is "property of the estate"), § 544 (which authorizes a trustee to, in effect, capture property of the estate by exercising all powers of a judgment creditor), § 522 (which sets out exemptions in bankruptcy cases), nor any other provision of the Bankruptcy Code, expressly refers to § 407, the BAP held that the trustee had no authority to administer, as property of the bankruptcy estate, moneys paid to a debtor as social security benefits.[20] "In other words," the BAP held, "such proceeds are not property of the bankruptcy estate."[21]

Section 8346 does not contain limiting language similar to that found in § 407 quoted above. As a result, while I have concluded here that § 8346 *exempts* CSR benefits (even when already paid to the debtor), that statute does not remove such benefits from a debtor's bankruptcy estate in the way that § 407 does. Further, since the exemption comes from a federal law other than § 522(d), it would appear that that

---

[19] 42 U.S.C. § 407(a) and (b) (emphasis added).

[20] *In re Carpenter*, 2009 WL at *3.

[21] *Id.*

9

exemption would apply only to those debtors who choose, or are required to claim (as Missouri debtors are), exemptions under state law and federal law other than § 522(d).

### *Applicability of In re Pyatt*

The Debtors raise an alternative argument which warrants discussion, even though it is not determinative in this case due to the foregoing holding that the CSR funds in the bank account are exempt. As mentioned above, the Trustee correctly concedes that, pursuant to the Eighth Circuit's decision in *In re Pyatt*,[22] had the money in the bank account been non-exempt, he would not be entitled to turnover from the Debtors of money represented by checks which had been written by the Debtors, but not yet cleared, until after the bankruptcy case was filed. Rather, he would have had to pursue those funds in the hands of the payees of the prepetition checks. The Debtors appear to contend, however, that *Pyatt* stands for the proposition that, even though funds in a checking account as of the petition date are property of the estate, debtors are essentially free to write checks on such account postpetition, without consequence, up until the time that the trustee makes demand for the turnover of such funds. In other words, if the debtors are able to dissipate funds from their checking account before the trustee has a chance to make a demand for such funds, the debtors

---

[22] 486 F.3d 423 (8th Cir. 2007).

10

are off the hook; the trustee must look elsewhere to recover those funds.  Here, the Trustee did not make such a demand until the filing of the motion for turnover on April 20, 2009.  By that time, the Debtors had spent all of the funds that had been held in the account on the date of the petition.

The debtors' argument is contrary to § 542,[23] which requires an entity in possession, custody, or control of property of the estate to turn such property over to the trustee.  Funds in the debtors' checking account, upon which no checks have been written as of the date of the petition, are property of the estate.[24] Therefore, while I rule for these debtors on other grounds, I note that this alternative argument would fail.  *Pyatt* should not be read to mean that a debtor is free to spend estate funds postpetition until such time as demand for such funds is made by the trustee.

## CONCLUSION

For these reasons, the motion of Trustee for turnover is DENIED.

IT IS SO ORDERED.


                                            /s/ Arthur B. Federman
                                                 Bankruptcy Judge

Date: 8/10/2009

---

[23] 11 U.S.C. § 542.

[24] 11 U.S.C. § 541(a)(1).

Attorney for movant to serve parties not receiving electronic notice